UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | |
|---|---|
| 527 ORTON LLC, 528 ANTIOCH LLC, 505 ORTON, LLC, 533 ORTON, LLC f/k/a Windamar, LLC, and LORELEI PROPERTY MANAGEMENT GROUP, LLC, | Case No.: 0:13-cv-61571 DIMITROULEAS/SNOW |
| Plaintiffs, | |
| vs. | |
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation, | |
| Defendant/Counterclaim Plaintiff | |
| vs. | |
| JEFFREY S. HOCHFELSEN, 527 ORTON LLC, 528 ANTIOCH LLC, 505 ORTON, LLC, 533 ORTON, LLC f/k/a Windamar, LLC, and LORELEI PROPERTY MANAGEMENT GROUP, LLC, | |
| Counterclaim Defendants. _____/ | |

**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, 527 ORTON LLC, 528 ANTIOCH LLC, 505 ORTON, LLC, 533 ORTON, LLC f/k/a Windamar, LLC and LORELEI PROPERTY MANAGEMENT GROUP, LLC ("Plaintiffs") and counterclaim defendant, JEFFREY S. HOCHFELSEN ("Hochfelsen," together with Plaintiffs, "Counterclaim Defendants") by and though their attorneys Keith D. Silverstein, P.A., and pursuant to Rule 56, *Federal Rules of Civil Procedure*, Local Rules 7.1 and 56.1, and the Order Setting Trial Date & Discovery Deadlines, Referring Case to Mediation & Referring

Discovery Motions to United States Magistrate Judge [D.E. 18 and 26], hereby file this motion for summary judgment and its supporting exhibits annexed to the Declaration of Keith D. Silverstein, and respectfully move this Court to enter summary judgment in favor of Plaintiffs and Counterclaim Defendants, and against defendant/counterclaim plaintiff, Continental Casualty Company ("Continental"). In support of this motion, Plaintiffs and Counterclaim Defendants states as follows:

STATEMENT OF UNDISPUTED FACTS
FOR PURPPOSES OF SUMMARY JUDGMENT

**A.    Hochfelsen Applied For A "Claims Made Policy" with Gilsbar Specialty Insurance Services, Inc., and was Insured with Continental Casualty Company**

1.     On January 4, 2005, Hochfelsen accepted a Lawyer's Professional Liability Proposal issued by Gilsbar Insurance Services ("Gilsbar"), on behalf of Continental, for "Claims-Made Protection" effective January 1, 2005. (Ex. A; A copy of Lawyer's Professional Liability Proposal).

2.     Gilsbar provided Hochfelsen with a "Claims-Made Protection document" that included "important policy information." (See Ex. A; A copy of "The Claims-Made Protection document" provided by Gilsbar). The Claims-Made Protection document specifically states that:

> **A claims-made policy covers claims reported while the policy is in force**; therefore, the risk that's insured is the risk of claims reported during the current policy period, and the coverage is priced based on current market conditions.
>
> How does the claims-made policy work? A claims-made policy covers claims on the basis of when an alleged malpractice incident is reported. For example, consider that a claim arises in 2005 for legal service provided in 2003. The 2005 claims-made policy provides coverage.
>
> **Claims-made coverage must be continuously in force from the time legal service is provided until the claim is reported.**
>
> How is the claims-made policy priced? During the first year of a claims-mode policy, coverage is provided for claims arising from legal services provided in year one that are reported in year one. The second year of claims-made coverage provides for claims reported during year two resulting from legal services provided in year one or year two of the policy. **The third year of claims-made coverage provides for claims reported during the third year of coverage resulting from legal services provided in years one, two and three.** Each year the likelihood of a claim being reported grows. This increase in exposure is reflected in the pricing of the policy.

> The cost of claims-made coverage increases incrementally each year during the early years of coverage. This is referred to as the "claims-made step factor" and is due to the cumulative effect of claims reported each succeeding year. Eventually, the number and cost of claims reported levels off. When this leveling off occurs the mature claims-made rate has been reached.

(See Ex. A)(emphasis added). Hochfelsen purchased the Claims-Made Protection from Gilsbar. Acting through Gilsbar as its agent in Florida, Continental issued a Lawyer Professional Liability Policy to Hochfelsen for the policy period January 1, 2005 to January 1, 2006 (the "2005 Initial Policy"). (See Ex. D) Upon receipt of a copy of the 2005 Policy, Hochfelsen confirmed that the limits of liability were correct and the policy period was correct. (See Ex. B; Hochfelsen Dep. Tr. 33:9-13).

3.      Upon issuance of the 2005 Initial Policy, Hochfelsen did not understand that it was a "claims made *and reported* policy". (See Ex. B; Hochfelsen Dep. Tr. 33:21-25). He understood that it was a claims made policy because that was what Gilsbar explained to him. (See Ex. B; Hochfelsen Dep. Tr. 33:23-25; 24:10-16). At the time he first became insured on January 1, 2005 and based upon his correspondence with Gilsbar, he understood that "any acts that were done prior to 2005 would not be covered, but anything from 2005 on as long as [he] maintained coverage would be covered." (See Ex. B; Hochfelsen Dep. Tr. 44:20-24; 45:3-10).

4.      Each year thereafter, between January 1, 2006 and January 1, 2010, Hochfelsen received a "Renewal Quote" for Claims-Made Protection and was provided with a copy of the Claims-Made Protection document. On or about January 4, 2006, Hochfelsen received a "Notice of Options: Extended Reporting Period" from Gilsbar advising, again, that his "coverage is a claims-made policy." (See Ex. C; A copy of correspondence from Gilsbar, dated January 4, 2006). Therafter, Hochfelsen understood that if he failed to keep continuous coverage in place, he would not be "covered for any acts unless [he] purchase[d] an extended period coverage." (See Ex. B; Hochfelsen Dep. Tr. 63:20-23).

5.      Hochfelsen maintained continuous coverage with Continental between January 1, 2005 through January 1, 2010. Continental issued policies to Hochfelsen for the Policy Periods January 1, 2006 to January 1, 2007 (the "2006 Renewal Policy"); January 1, 2007 to January 1, 2008 (the "2007 Renewal Policy"); January 1, 2008 to January 1, 2009 (the "2008 Renewal Policy"); January 1, 2009 to January 1, 2010 (the "2009 Renewal Policy") and January 1, 2010 to January 1, 2011 (the "2010 Renewal Policy") which are substantively indistinguishable from the

initial 2005 Policy. (See Ex. E, F, G, H and I; (True and correct copies of the 2006 Renewal Policy, 2007 Renewal Policy, 2008 Renewal Policy, 2009 Renewal Policy and 2010 Renewal Policy).

6. The 2005 Initial Policy and each of the 2006 Renewal Policy, 2007 Renewal Policy, 2008 Renewal Policy and 2009 Renewal Policy share the same Continental policy number: 268072210. (See Ex. E, F, G, H and I) The 2005 Initial Policy and all of the Renewal Policies are collectively referred to herein as "Continental Policy 268072210."

**B. The Underlying Litigation *527 Orton, et al. vs. Hochfelsen, et. al.* and Continental's Subsequent Denial of Coverage**

7. On August 21, 2008, Plaintiffs commenced litigation against Hochfelsen claiming professional negligence, *inter alia*, that Hochfelsen had committed malpractice by failing to covey $250,000.00 to Plaintiffs that was allegedly being held by Hochfelsen, as escrow agent, under a contract to purchase certain parcels of commercial real estate ("Underlying Litigation"). (Ex. __; A copy of the Complaint in the matter *527 Orton, LLC, et. al. v. Jeffrey S. Hochfelsen*, Fifteenth Circuit Court, Palm Beach County, Florida, Case No. 2008CA025135).

8. Shortly thereafter, Hochfelsen forwarded the complaint to Continental and requested that Continental defend and indemnify him against the claims made by Plaintiffs in the complaint. Continental agreed to provide Hochfelsen with coverage and a defense, subject to certain reservation of rights. (See Ex. K; A copy of correspondence from Continental, dated October 24, 2008).

9. By correspondence, dated May 27, 2009, Continental asserted that Hochfelsen had failed to provide timely notice of Plaintiffs' claim and determined that coverage for Plaintiffs' claims was not afforded under the 2008 Renewal Policy and withdrew the defense that had been provided under the 2008 Renewal Policy. (See Ex. L; A copy of correspondence from Continental, dated May 27, 2009).

10. Specifically, Continental denied coverage to Hochfelsen claiming that:

> Your Policy runs from January 1, 2008 until January 1, 2009. As your Policy requires claims to be reported in the same policy year as the claim is made against you, your firm, or members of your firm, *to the extent that a claim was asserted in prior to January 1, 2008, it should have been reported to Continental during a prior policy period*.

> In reviewing the materials from your file related to the escrow matter, the documents show claimant's counsel demanded payment from you of the subject escrow amount ($250,000.00) on October 7, 2005.
>
> \* \* \*
>
> In correspondence dated March 3, 2006, claimant's counsel states the matter has been turned over to litigation counsel . . . and . . . states that litigation will be instituted if payment is not made; and requests information regarding your insurance coverage.
>
> This demonstrates that you had notice of this claim - that is, a claim was made – during *either your January 1, 2005 to January 1, 2006 Policy year or your January 1, 2006 to January 1, 2007 Policy year*. . . . The terms of the Policy require that claims be both made and reported in the same policy period. My records indicate that did not occur. Accordingly, there is no coverage under the Policy related to the complaint, and Continental Casualty Company will not provide a defense. As stated, the defense that has been provided to date will be withdrawn in thirty (30) days, on June 28, 2009, and it will be your responsibility to obtain your own defense counsel, or to make independent arrangements with currently appointed defense counsel to continue his representation.

(See Ex. L)(emphasis added). Although Hochfelsen acknowledged having received the October 7, 2005 and March 3, 2006 correspondence relied upon by Continental, after the initial exchange of correspondence he never heard about the matter again until he received the complaint in the Underlying Litigation. (See Ex. B; Hochfelsen Dep Tr. 12:2-17) The was no communication or activity by either Plaintiffs or Hochfelsen between March 3, 2006 and August 21, 2008 when the complaint against Hochfelsen was filed. There is no evidence that Continental's handling of the claim against Hochfelsen was altered in any manner as a result of Hochfelsen's reporting of the claim by Plaintiffs in 2008.

      11.    Plaintiffs and Hochfelsen reached a settlement of the claims in the Underlying Litigation, as set forth in the Settlement Agreement, dated June 7, 2013. (See Ex. M; A copy of the Settlement Agreement, dated June 7, 2013). Thereafter, a Stipulated Order and Consent Final Judgment for a total amount of $250,000.00 was entered against Hochfelsen on or about June 25, 2013. (See Ex. N; A copy of the Stipulated Order and Consent Final Judgment).

      12.    Concurrent with the execution of the Settlement Agreement, Hochfelsen executed an assignment of all claims and causes of action against Continental arising out of, or on account of, or connected to, any damages sustained by Plaintiffs as a result of any act or omission by

Hochfelsen alleged in the Complaint. (See Ex. N; A copy of the Assignment, dated June 7, 2013 attahed to the Stipulated Order and Consent Final Judgment).

13. Plaintiffs filed this action against Continental alleging breach of contract (Count I) and declaratory judgment (Count II) arising out of Continental's wrongful denial of professional liability coverage to Hochfelsen.

14. By its counterclaim, Continental seeks a declaration that no coverage was available for Plaintiffs' claim against Hochfelsen for professional malpractice under Lawyers Professional Liability Policy No. LAW- 268072210, which Continental issued to Hochfelsen for the policy period January 1, 2008 to January 1, 2009. (See Ex. G; the 2008 Renewal Policy).

15. However, Continental's complaint for declaratory judgment, which relies on the "*claims made and reported*" nature of Continental Policy 268072210, fails to consider the language of the policy as a whole and thus fails to consider the ambiguities present in the policy language which compels coverage to Hochfelsen in this case.

16. A detailed analysis of the policy language as a whole and the facts of this case reveal that Continental Policy 268072210 fails to address the impact of policy renewal on the Insureds' rights under the policy's reporting provisions. As a result, Continental Policy 268072210 is ambiguous and must be construed in favor of coverage under circumstances where the insured, Hochfelsen reported Plaintiffs' claim to Continental during a period of continuous coverage. Consistent with the "Claims-Made Protection" document provided to Hochfelsen by Gilsbar, coverage was "continuously in force from the time legal service [was] provided until the claim was reported," for a claim that arose during the period of continuous coverage. (See Ex. A)

17. Plaintiffs' claim against Hochfelsen were both made and reported to Continental during the continuous coverage under the Continental Policy 268072210.

## ARGUMENT

**I. Legal Standard for Summary Judgment and Applicable Law**

Summary judgment shall be granted if the movant shows there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This case deals with the interpretation of an insurance contract. Interpretation of an insurance contract is a matter of law to be determined by the Court. *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir.1993); *Oyola v. Empire Indemnity Insurance Company*, 2006 WL

3708089, *2 (M.D.Fla.). In construing an insurance policy, courts are required to read the policy as a whole, giving each of the contract provisions its full meaning and operative effect. *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1306 (11th Cir.2008). Policy language is ambiguous if it is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage. *Id*. Ambiguity may also arise from silence. *Dahl-Eimers*, 986 F.2d at 1381. Differing interpretations of the same provision is also evidence of ambiguity. *Id.* at 1382. If a policy provision is ambiguous, it must be interpreted against the insurer and in favor of the insured and coverage. *Penzer*, 545 F.3d at 1306. Terms in an insurance policy are to be read in light of the skill and experience of ordinary people and given their plain and ordinary meanings. *Id*. Where a provision excludes or limits the liability of an insurer, that provision is construed even more strictly **against the insurer** than provisions that allow coverage. *Id*. at 1309, *citing Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000). Further, where the insurer puts forth a defense against coverage "the burden of proof rests on the insurance company to demonstrate that the coverage was inapplicable." *Penzer*, 545 F.3d at 1309, *quoting U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061, 1065 (Fla.1983).

**II.     Under *Cast Steel Products, Inc. v. Admiral Insurance Company,* the Policy Provisions Addressing Automatic Extended Reporting are Ambiguous in Light of the Renewal of the Policy, and thus the Policy Must be Interpreted in Favor of Coverage for Hochfelsen.**

Notwithstanding the fact the Initial Policy is a "claims made and reported policy," and assuming as true that Hochfelsen's claim was not reported to Continental until approximately October 24, 2008, coverage is available to Hochfelsen based on the ambiguity created by the extended reporting provisions in Continental's 2005 Initial Policy.

In this case, the 2005 Initial Policy is ambiguous because it does not address what happens to the Insureds' right to extended reporting of claims in the event the insurance policy is <u>renewed</u> (but instead specifically addresses only extended reporting in the event of cancellation or non-renewal). Upon Hochfelsen's renewal with Continental, the Initial 2005 Policy and each of the 2006 Renewal Policy, 2007 Renewal Policy, 2008 Renewal Policy and 2009 Renewal Policy appear to create a continuous, seamless coverage period commencing January 1, 2005 and ending January 1, 2010, and thus Hochfelsen understood that he had continuous coverage for that period. (See Ex. B; Hochfelsen Depo. Tr. 44:20-24; 45:3-10). Continental encouraged this understanding by Hochfelsen by (i) permitting Gilsbar to send the "Claims Made Protection" document with the

initial Lawyer's Professional Liability Proposal and each subsequent renewal and (ii) by assigning the same Policy Number (268072210) to both the Initial 2005 Policy and each of the 2006 Renewal Policy, 2007 Renewal Policy, 2008 Renewal Policy and 2009 Renewal Policy.

The fact that renewal is not addressed with regard to extended reporting implies there is no need for the extended reporting provision because the insured can simply report a claim under the Renewal Policy, which again, was designated with the same policy number as the Initial Policy. Under Florida law this ambiguity must be interpreted in favor of Hochfelsen and coverage, and strictly construed against Continental. As a result, Hochfelsen's reporting of Plaintiffs' claims on or about October 24, 2008, shortly after he received the complaint, must be considered timely.

This case is controlled by *Cast Steel Products, Inc. v. Admiral Insurance Company*, 348 F.3d 1298 (11th Cir.2003). In *Cast Steel* the insured, Cast Steel Products, Inc. ("Cast Steel") purchased professional liability insurance from Admiral Insurance Company ("Admiral") in the form of an initial 1999 claims-made policy which had a retroactive effective date of January 6, 1999 and an expiration date of January 6, 2000. Cast Steel renewed that policy, and the renewal policy had an effective date of January 6, 2000, and expiration date of January 6, 2001. *Id*. at 1300. The initial policy purchased by Cast Steel and its renewal purported to be claims made and reported policies which would "cover only those claims which had both accrued and were reported to Admiral during the policy period indicated on the face of the policy." *Id*. at 1300.

Cast Steel was awarded a contract to deliver pallet cars to another company, Hibbing Taconite ("Hibbing"); however, after delivery, it was discovered that bearings on the wheels of the pallet cars were defectively designed. *Id.* Cast Steel reported the Hibbing claim to its broker, but the broker failed to report the claim to Admiral until just after the initial policy period expired and the renewal period began. *Id.* Admiral issued a reservation of rights letter, and later denied coverage for the Hibbing claim based upon the fact the claim was reported outside the initial coverage period. The District Court sided with Admiral based upon the reasoning in *Pantropic Power Prods., Inc. v. Fireman's Fund Ins. Co.*, 141 F.Supp.2d 1366 (S.D.Fla.2001).

In *Pantropic*, an argument similar to that made by Cast Steel - that the renewal created continuous coverage - was rejected based on the nature of claims made and reported policies and the particular policy language and arguments asserted in that case. *Id*. at 1370-71. In the *Cast Steel* case, upon appeal of the lower court's decision in favor of Admiral and against Cast Steel, the Eleventh Circuit <u>rejected</u> application of *Pantropic*, <u>reversed</u> the District Court decision, and found

in favor of coverage for Cast Steel. In rejecting *Pantropic*, the Eleventh Circuit distinguished *Pantropic* because the policy at issue in that case specifically included a grace period for reporting all claims after the end of the policy period, notwithstanding renewal. In *Pantropic,* the time for reporting a claim "included the expressed policy period plus a 60-day grace period. Because the *Pantropic* plaintiff submitted its claim 16 days after the 60-day grace period expired, it was not entitled to coverage even though it had renewed its policy for consecutive years with insurer." *Cast Steel*, 348 F.3d at 1302 (emphasis added)(citation omitted). Unlike the insured in Pantropic, Cast Steel did not miss a "grace period" reporting deadline. Rather, Cast Steel reported its claim during the pendency of the renewal policy and during the period of continuous coverage.

In this case, as in *Cast Steel*, Hochfelsen reported his claim during the period of continuous coverage spanning 2005 through 2009. Accordingly, the issue is whether Gilsbar's issuance of the "Claims Made Policy" documentation, and the ambiguity created by the extended reporting provisions in Continental Policy 268072210 render the policy ambiguous, and thus if interpreted in favor of Hochfelsen, allow for the reporting of Hochfelsen's claim on October 24, 2008 shortly after he received "legal service."

In its analysis, the Court in *Cast Steel* examined the extended reporting provision in the policy Cast Steel purchased from Admiral and found it was ambiguous in regards to whether it applied upon renewal. *Id*. at 1300. Interpreting the policy in favor of the insureds, the Court found in favor of the insured and coverage. *Id*. The initial policy in *Cast Steel* contained an extended reporting period provision that provided as follows:

> *If the policy is cancelled or not renewed by the Named Insured an automatic thirty (30) day Claims Extension Period shall apply to claims, provided such claims are not covered under any subsequent insurance purchased by the Named Insured, or that would be covered but for the exhaustion of the amount of insurance applicable to such claims.*

*Id*. at 1302 (emphasis added). The Court found that the clause above was ambiguous as to whether extended reporting was necessary upon renewal and on that issue stated, "It seems to us that the most reasonable interpretation of the extended reporting clause is that it automatically extends the reporting period through renewal." *Id.* at 1304. After determining the provision rendered the policy ambiguous, the Court interpreted the in favor of coverage. *Id*. at 1304.

In arriving at its conclusion, the Court looked to the case of *Helberg v. Nat'l Union Fire Ins. Co.*, 102 Ohio App. 3d 679, 657 N.E.2d 832 (1995). In *Helberg*, the Sixth District of Ohio

determined that a claim accruing during the first year of a claims-made policy, but not reported until the second year following a renewal of the policy, was covered under the policy period based on the reporting extension clause contained in the Initial Policy which did not address renewal, and the fact there was continual coverage with the same insurer upon renewal. *Id.* at 834-835. The Eleventh Circuit in *Cast Steel* noted that the *Helberg* plaintiff "was undisputedly aware of the claim against him on October 21, 1991, but failed to report the claim to National until January 21, 1992." *Cast Steel*, 348 F.3d at 1303. It further noted that although the Sixth District of Ohio recognized a claims-made and reported policy requires reporting of a notice of action against the insured during the policy period, it nonetheless found support for coverage in the policy's extended reporting endorsement and explained:

> In the present case, there was no cancellation of coverage, nor did the insured change insurance carriers. The insured merely renewed his claims-made policy. Such an event *should not precipitate a trap wherein claims spanning the renewal are denied*. *Id.* at 834 (emphasis added).

*Id.* at 1303, *quoting Helberg*, 657 N.E.2d at 834. Distinguishing *Pantropic*, the Eleventh Circuit went on to comment that the policy at issue in *Helberg*, like the policy obtained by Cast Steel (and the policy issued by Continental in this case), did not provide the insured with a grace-period after "expiration" of the policy period to report claims, despite renewal by the insured. *Id.* Rather, "Helberg policy's extended reporting clause set out only two circumstances when purchase of a reporting extension was necessary to maintain coverage - upon cancellation or non-renewal." *Id.* at 1303. The Eleventh Circuit then concurred with the reasoning in *Helberg*, noting that it was both "illogical and inequitable" to deny coverage to an insured that renews its policy for successive years with the same insurer under such circumstances, and that if "choosing to cancel or non-renew provided the insured with an extended reporting period, electing to continue to do business with the same insurer by renewing the claims-made policy certainly "should not precipitate a trap wherein claims spanning the renewal are denied." *Id.* at 1304, *quoting Helberg*, 657 N.E.2d at 834.

The provisions of the Continental Policy are substantially the same as the policy language in *Cast Steel*. The 2005 Initial Policy issued by Continental in this case provides, in pertinent part, as follows:

> EXTENDED REPORTING PERIODS
>
> As used herein, "extended reporting period" means the period of time after the end of the policy period for reporting claims by reason of an act or omission that occurred prior to the end of the policy period and is otherwise covered by this Policy.
>
> A. Automatic extended reporting period.
>
> If this Policy is cancelled or non-renewed by either the Company or the Named Insured, the Company will provide to the Named Insured an automatic non-cancelable extended reporting period starting at the termination of the policy period if the Named Insured has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy. This automatic extended reporting period will terminate after sixty (60) days.

(See Ex. D; 2005 Initial Policy §VI.A)(emphasis added). As in *Cast Steel* and *Helberg*, Continental Policy 268072210 fails to address the impact of Hochfelsen's renewal on the reporting provisions of the policy and fails to contain a grace-period, thus making the requirement that all reporting occur during the "policy period", and the need for any extension on reporting, ambiguous. This interpretation is consistent with the text of the "Claims-Made Protection" document provided by Gilsbar that:

> **A claims-made policy covers claims reported while the policy is in force** . . . A claims-made policy covers claims on the basis of when an alleged malpractice incident is reported. For example, consider that a claim arises in 2005 for legal service provided in 2003. The 2005 claims-made policy provides coverage. . . . Claims-made coverage must be continuously in force from the time legal service is provided until the claim is reported. . . . **The third year of claims-made coverage provides for claims reported during the third year of coverage resulting from legal services provided in years one, two and three.**

Pursuant to Florida law, and the authority of the Eleventh Circuit in *Cast Steel*, the ambiguity regarding extended reporting in the 2005 Initial Policy - its failure to address reporting upon a renewal of the insurance in conjunction with its failure to provide for a grace period - must be construed against Continental and in favor of coverage to Hochfelsen. Thus, as a result of the renewal of the Initial 2005 Policy, and each policy renewal thereafter, Hochfelsen's claims were timely reported in the same policy period he received "legal service" of the complaint in the Underling Litigation for a claim arising while Hochfelsen was continuously covered by Continental.

Continental will likely make several arguments[1] attempting to distinguish its policy and the circumstances of this case from those of *Cast Steel*. Continental may argue first that the holding in *Cast Steel* is limited to only those cases where the reporting in question took place shortly after the expiration of the initial policy. However, the Eleventh Circuit opinion in *Cast Steel* is <u>not</u> so limited, and its holding relied on the case of *Helberg* in which there was a significantly longer delay between the day the insured learned of the claim and the day the insured reported the claim to its insurance company. The Eleventh Circuit's reference in its opinion to the *Helberg* case, the three month delay in reporting following the *Helberg* insured's knowledge of the claim, and the approximately six week delay in that insured's reporting following the end of the policy period, could contradict Continental's argument that the Eleventh Circuit intended to so severely limit its holding in *Cast Steel*.

Continental may also dispute its policy is ambiguous concerning the availability of extended reporting. Continental may attempt to distinguish *Cast Steel* by contending that its policy does address extended reporting in the context of renewal. Continental may point to language in its extended reporting provision which makes the extended reporting provision applicable "if the Named Insured has not obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy." Continental may contend this language eliminates any ambiguity and definitively dictates that if the policy is renewed (i.e. another policy of professional liability insurance is purchased) there can be no reporting after the policy period ends.

This argument is without merit because (i) it is contrary to a plain reading of the Continental Policy 268072210; and (ii) the language of the Continental Policy 268072210 addresses circumstances under which extended reporting is <u>not</u> available and does not identify policy *renewal* as one of those circumstances; and (iii) the extended reporting provision in the *Cast Steel* policy contained similar language, and the Eleventh Circuit did not find such policy language clarified the extended reporting provision as to a "renewal" in any manner. *Cast Steel*, 348 F.3d at 1302.

---

[1] Continental may attempt to distinguish itself from the insurer in Cast Steel by claiming that Continental maintained distinct policies for distinct policy periods, while the insurer in Cast Steel did not attempt to argue that it issued two "distinct" policies. However, Continental's argument in such regard would be unavailing. The fact that each Policy was automatically renewed and the Renewal Policy issued, and that the Policy and each Renewal Policy in fact bear the identical policy number, are undisputed. (Ex. C, D, E)

The provision within the 2005 Initial Policy which Continental may rely upon says nothing about "renewal" in the context of extended reporting availability. The language instead addresses consequences if the insured "obtained another policy of lawyers professional liability insurance within sixty (60) days of the termination of this Policy." This language does not address the application of extended reporting upon renewal of "this Policy." It can't. The insured has a right to a period of extended reporting under the policy if the policy is cancelled or non-renewed. The insured's right to extended reporting is avoided if the insured, sometime within 60-days after the cancellation or non-renewal, procures another policy of professional liability insurance. Accordingly, the extended reporting period under the 2005 Initial Policy does not arise unless the Initial Policy is canceled or non-renewed. If the Initial Policy must have been cancelled or non-renewed to give rise to the extended reporting benefit then the other policy of professional liability insurance referred to cannot be a Continental policy and cannot be a renewal. Clearly the language refers only to a "replacement" policy issued by another insurer. Continental's 2005 Initial Policy remains ambiguously silent about the necessity for and availability of extended reporting in the event of renewal.

Taken to its ultimate conclusion in this case, Continental's argument is essentially that by paying a premium to renew its policy, an insured is actually <u>losing</u> coverage and an extended reporting opportunity that it would otherwise have.

The more reasonable interpretation of the extended reporting provision is that the automatic non-cancelable extended reporting provision is not available when a policy is renewed by an insured (as opposed to cancelled or not renewed) because it is not needed when a policy is renewed by an insured. It is not needed because the insured has continued his seamless coverage and can report under the renewal policies.

When reading the policy as a whole, as opposed to reading the "made and reported" language in isolation, it is apparent that the reporting provisions of the policy provide for more extensive reporting opportunities than Continental would admit. The ambiguity of the extended reporting provision discussed above is one example of a policy term that must be considered when analyzing the policy as a whole. Another such provision is the term of the policy which deals with the elimination of the extended reporting provision. This provision specifically provides for instances when an extended reporting period is *not* available, and in so doing, declines to include

the "*renewal*" of a policy among those circumstances. The 2005 Initial Policy provides in pertinent part:

> Elimination of right to any extended reporting period. There is no right to any extended reporting period:
> 1. if the Company shall cancel or refuse to renew this Policy due to:
>    a. non-payment of premiums; or
>    b. non-compliance by an Insured with any of the terms and conditions of this Policy; or
>    c. any misrepresentation or omission in the application for this Policy; or,
> 2. if at the time this right could be exercised by an Insured, such Insured's right to practice law has been revoked, suspended or surrendered at the request of any regulatory authority for reasons other than that the Insured is totally and permanently disabled.

(See Ex. D; 2005 Initial Policy, § VI.F.) Employing the well established doctrine of "*expressio unius est exclusio alterius*" (the expression of one thing is the exclusion of another) the fact that renewal of the 2005 Initial Policy is not included as an event that eliminates the right to an extended reporting period, indicates renewal of the 2005 Initial Policy does not eliminate the opportunity for extended reporting. Thus, extended reporting was available to Hochfelsen at the time the Underlying Litigation claim was reported.

Continental's position appears to be that the failure of its extended reporting provision to address renewal equates to a clear and unambiguous expression of the policy that no extended reporting is available in the event of renewal. This is contrary to the holding and rationale in *Cast Steel*, and the same argument by Admiral was rejected in that case. The same failure by Admiral to address renewal in the context of extended reporting in that case rendered the policy ambiguous.

### A. Continental's Policy 268072210 (Form G-118011-A (Ed. 07/01) Has Been Determined to be Ambiguous in *Continental Casualty Company v Black, Sims & Birch, LLP, et al.*, Case No. 6:10-cv-1290-Orl-35KRS (M.D.Fla. Dec. 14, 2011)(Scriven, J.)

In *Continental Casualty Company vs. Black, Sims & Birch, LLP, et al.*, Case No. 6:10-cv-1290-Orl-35KRS (M.D.Fla. Dec. 14, 2011) (Scriven, J.), the Court determined that the claims made and reporting provisions of the Lawyer's Professional Liability Policy here at issue, Form G-118011-A (Ed. 07/01), was ambiguous and found in favor of the insured in a case very similar to the present case. (See Ex. O; Order, dated December 14, 2011) As the Court stated:

> Continental argues that the claims made and reported provisions in both policies prevent coverage under either policy. They argue that the claim was made prior to the expiration of the 2007 policy and was not reported until August 19, 2008, which was after the expiration of the 2007 policy and within the term of the 2008 policy. Accordingly, Continental argues that because the claim was not made and reported during a single policy period, the claims made and reported provisions prevent coverage under either policy.
>
> Among other things, Defendants argue that the policies' terms are ambiguous regarding an extended reporting period if the policy is renewed, and therefore, coverage should be provided. They argue that *Cast Steel Products, Inc. v. Admiral Insurance Company*, 348 F.3d 1298 (11th Cir. 2003), is controlling and mandates judgment in their favor.

*Id.* at pg. 10. Ultimately, the Court determined that "like the Cast Steel policy, the Continental 2007 policy is ambiguous regarding the application of the extended reporting provision when the policy is renewed. Pursuant to Florida law, any ambiguity must be construed against the drafter and in favor of the insured. *Swire Pacific Holdings*, 845 So.2d at 165" *Id.* at pg. 10.

Accordingly, as Continental Policy 268072210 here at issue has already been determined to be ambiguous, and there is no question that Hochfelsen reported the claim during the 2008 Renewal Policy period shortly after he received "legal service" of the complaint (and there was continuous coverage between the time he arguable received notice that a claim may be asserted against him), Continental Policy 268072210 must be construed against Continental and in favor of coverage to Hochfelsen,

## CONCLUSION

The undisputed facts and law show that the policy provisions addressed above (regarding the impact of a policy renewal on the automatic extended reporting provisions) are ambiguous, and should be interpreted in favor of Hochfelsen, to provide for coverage. The provisions of the 2005 Initial Policy when read as a whole do not provide for the elimination of reporting following renewal, but instead provide for the timely reporting of the Underlying Litigation during the continuous coverage that Hochfelsen maintained with Continental. For the reasons set forth herein, Plaintiffs and Counterclaim Defendants respectfully request the Court grant summary judgment in their favor and find that Continental Policy 287142298 provides coverage for the Hochfelsen.

Dated: July 21, 2014.

                                    Respectfully submitted,

                                    KEITH D. SILVERSTEIN, P. A.
                                  1177 Kane Concourse, Suite 230
                                  Bay Harbor Islands, Florida 33154
                                  Telephone: (305) 868-0200
                                  Facsimile: (305) 868-1045
                                  keith.silverstein@gmail.com

                              By:   *Keith D. Silverstein*
                                  Keith D. Silverstein, Esq.
                                  Florida Bar No. 086820
                                  Attorneys for Plaintiffs and Counterclaim
                                  Defendants

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF electronic mail notification system, via U.S. First Class Mail, postage prepaid, on this 21st day of July, 2014, upon all parties as set forth on the attached service list and in the manner set forth thereunder.

                                                        Keith D. Silverstein
                                                Keith D. Silverstein, Esq.
                                                Florida Bar No. 086820

CM/ECF SERVICE LIST

Charles C. Lemley, Esq.
Ashley Eiler, Esq.
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
(Tel) 202.719.7354
(Fax) 202.719.7049
CLemley@wileyrein.com
AEiler@wileyrein.com

Keith D. Silverstein, P.A. ● 1177 Kane Concourse, Suite 230 ● Bay Harbor Islands, FL 33154
(T) (305) 868-0200 ● (F) (305) 868-1045
www.silversteinpa.com