UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61571-CIV-DIMITROULEAS

527 ORTON LLC, 528 ANTIOCH LLC, 505
ORTON, LLC, 533 ORTON, LLC f/k/a
Windamar, LLC, and LORELEI PROPERTY
MANAGEMENT GROUP, LLC,

    Plaintiffs,

vs.

CONTINENTAL CASUALTY COMPANY,
an Illinois corporation,

    Defendant/Counterclaim Plaintiff,

vs.

JEFFREY HOCHFELSEN, 527 ORTON,
LLC, 528 ANTIOCH LLC, 505 ORTON,
LLC, 533 ORTON, LLC f/k/a Windamar,
LLC, and LORELEI PROPERTY
MANAGEMENT GROUP, LLC,

    Counterclaim Defendants.

_____/

**OMNIBUS ORDER GRANTING DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS/COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Defendant/Counterclaim Plaintiff Continental Casualty Company's Motion for Summary Judgment [DE 27] and Plaintiffs and Counterclaim Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law [DE 28] (the "Motions"), both filed herein on July 21, 2014. The Court has carefully considered the

1

Motions [DE 27, 28], the Responses [DE 29, 30], and the Replies [DE 32, 33] and is otherwise fully advised in the premises.

## I.     BACKGROUND

The parties to this action are Plaintiffs/Counterclaim Defendants 527 Orton LLC, 528 Antioch LLC, 505 Orton, LLC, 533 Orton, LLC f/k/a Windamar, LLC, and Lorelei Property Management Group, LLC ("Underlying Claimants"); Counterclaim Defendant Jeffrey Hochfelsen; and Defendant/Counterclaim Plaintiff Continental Casualty Company ("Continental"). At issue is a series of professional liability insurance policies, Policy No. LAW-268072210 (the "Policy"), issued by Continental to cover Hochfelsen as the insured. *See* [DE 1 ¶ 12].

### A.     The Underlying Litigation

This action arises from an underlying case brought by the Underlying Claimants against Hochfelsen, an attorney. In 2005, Hochfelsen represented non-party The George Group LLC ("The George Group") in a real property transaction with the Underlying Claimants. *See* [DE 27-2 ¶¶ 1, 3]. Hochfelsen served as escrow agent and closing agent for The George Group in the transaction. [*Id.* ¶¶ 2-4]. The George Group defaulted by failing to pay the contracted amounts, causing the Underlying Claimants to demand a $250,000 deposit The George Group had put into escrow through Hochfelsen. [*Id.* ¶¶ 5-6]. The Underlying Claimants sent Hochfelsen multiple letters in 2005 and 2006 demanding the escrow deposit, to which Hochfelsen himself, and later his counsel, responded, denying Hochfelsen's liability ("2005-2006 Letters"). [*Id.* ¶¶ 6-11]. On August 21, 2008, the Underlying Claimants filed suit against Hochfelsen. [*Id.* ¶ 13].

  **B.**  <u>Hochfelsen's Insurance Coverage</u>

  At the time of the real estate transaction through the underlying litigation, Hochfelsen held insurance from Continental, which he had renewed each year from 2005-2009. *See* [*Id.* ¶¶ 15, 22]. Hochfelsen applied for this insurance through non-party Gilsbar Insurance Services ("Gilsbar"). [DE 28 ¶ 1]. Each year represented a distinct "claims-made-and-reported" policy (e.g., the "2006-2007 Policy" covers the period from January 1, 2006 to January 1, 2007, with the next policy starting January 1, 2007, the day that the preceding policy ends). *See* [DE 27-2 ¶¶ 15, 18, 22]. In order for a claim to be covered, it must be both made and reported during the same policy period. *See* [*Id.* ¶ 17-18]. At the time Hochfelsen purchased the insurance, Gilsbar provided him with a "Claims-Made Protection Document."[1] [DE 28 ¶ 2]. This document, along with conversations with Gilsbar, led Hochfelsen to believe that he would be covered for any malpractice committed from the time he obtained his first Continental insurance policy, so long as he continued to renew his coverage. *See* [*Id.* ¶ 3].

  Additionally, the language of the policies themselves provide for an automatic extended reporting period of 60 days following the termination date of the policy in the event that the "Policy is canceled or non-renewed by either the Company or by the Named Insured . . . if the Named Insured has not obtained another policy of lawyers professional liability insurance" within 60 days of termination. *See* [DE 28-10 at 11].

---

[1] The document states that "[a] claims-made policy covers claims reported while the policy is in force . . . Claims-made coverage must be continuously in force from the time legal service is provided until the claim is reported . . . The third year of claims-made coverage provides for claims reported during the third year of coverage resulting from legal services provided in years one, two, and three." [DE 28 ¶ 2].

### C. Facts Leading up to the Present Case

On or about September 29, 2008, Hochfelsen provided Continental with a copy of the complaint in the underlying litigation. [DE 27-2 ¶ 23]. This was Hochfelsen's first notice to Continental of his claim (the "Claim"). [*Id.* ¶ 24]. Initially, Continental agreed to provide Hochfelsen with a defense to the underlying litigation. [*Id.* ¶ 25]. However, Continental subsequently denied all coverage for the underlying litigation upon learning of the 2005-2006 Letters. [*Id.* ¶ 26]. According to Continental, the claim was not both made and reported within the same policy period, because Hochfelsen knew of the claim by 2006, but waited until 2008 to notify Continental. *See* [*Id.* ¶ 26, DE 27-1 at 14]. Therefore, Continental asserted that the claim was not covered by the 2008-2009 "claims-made" insurance policy. [*Id.*].

On June 7, 2013, the Underlying Claimants and Hochfelsen settled the underlying litigation, and Hochfelsen assigned his rights against Continental to the Underlying Claimants. [DE 28 ¶ 11]. The court in the Underlying Litigation entered a judgment for $250,000 against Hochfelsen and in favor of the Underlying Claimants. [*Id.* ¶¶ 11-12]. On June 25, 2013, the Underlying Claimants brought this action against Continental. [DE 1]. Shortly thereafter, Continental filed an answer and a counterclaim, and named Hochfelsen as a counterclaim defendant.[2] [DE 10].

The present issue is whether the Claim falls under his professional liability insurance provided by Continental. The parties do not dispute that the claim was "made" over a year before Hochfelsen notified Continental of the claim. Specifically, the question is whether any of

---

[2] Hochfelsen and the Underlying Claimants filed their Motion for Summary Judgment [DE 28], Response [DE 30], and Reply [33] jointly. For ease of identification, Hochfelsen and Underlying Claimants will be referred to, together, hereinafter as "Underlying Claimants."

Hochfelsen's policies will cover this claim, which was made, at latest, in 2006, but was not reported until 2008.

Both sides have filed motions for summary judgment. *See* [DE 27, 28]. Continental seeks (1) an entry of summary judgment in its favor and (2) a determination that none of the Continental-provided insurance policies cover the Claim. [DE 27]. Conversely, the Underlying Claimants seek entry of summary judgment in their favor and against Continental. [DE 28].

## II.     STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the

5

nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.   DISCUSSION
#### A.   Applicable Law

Courts should construe insurance policies as a whole. *Penzer v. Transportation Ins. Co*, 545 F.3d 1303, 1306 (11th Cir. 2008) (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000). Policy language should be given its plain meaning, however where the language is ambiguous (i.e., it could reasonably be interpreted either to compel coverage or to deny coverage) the language should be construed against the insurer. *Penzer*, 545 F.3d at 1036 (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla. 1998)). Furthermore, "the burden of proof rests with on the insurance company to demonstrate that coverage [is] inapplicable" in such a situation. *Penzer*, 545 F.3d at 1309 (quoting *U.S. Concrete Pipe Co. v. Vould*, 437 So.2d 1061, 1065 (Fla. 1983)).

There are several cases directly on-point. In *Pantropic*, Plaintiff, the "Insured," brought an action against Defendant, the "Insurer," for declaratory judgment. *Pantropic Power Prods., Inc. v. Fireman's Fund Insurance Co.*, 141 F.Supp.2d 1366, 1368 (S.D. Fla. 2001). The case involved a "claims-made" policy, which specified that only a claim that was both made against the insured during the policy period and that was reported to the insurer "as soon as practicable after the claim [was] made (but in no event more than 60 days following the end of the policy period)" would be covered. *Id.* The Insured had two relevant insurance policies from the same Insurer: (1) for the period from July 1, 1998 to July 1, 1999, and (2) from July 1, 1999, to July 1, 2000. *Id* at 1368, 1370. The claim accrued on November 12, 1998, within the first policy period,

6

but was not reported to the Insurer until September 17, 1999, well into the second policy period. *Id.* at 1368-69. According to the Insurer, this was too late to fall into the first, 1998-1999, policy because it exceeded the hard 60 day deadline for reporting (which ended September 1, 1999) by 16 days. *Id.* It could not fall under the second, 1999-2000, policy, because the claim accrued during the first policy period. *See id.*

The *Pantropic* court reasoned that a claims-made insurance policy is less expensive for the insured, but the trade-off is that the insured takes on more risk—only claims made and reported during the same policy period are covered. *See id.* at 1369. There was no "gap" in coverage—had the Insured reported the claim within the first policy period plus 60 days, it would have been covered. *Id.* at 1370. Just because the Insured renewed his first policy, does not mean that the two policies merged into one continuous policy period during which claims could be made and reported. *See id.* Therefore, the *Pantropic* court ruled in favor of the Insurer, finding that the claim was not made and reported during the same policy period, so the claim would not be covered. *See id.* at 1370, 1372.

In 2003, the Eleventh Circuit resolved a similar case, *Cast Steel Products, Inc. v. Admiral Insurance Co.*, 348 F.3d 1298 (11th Cir. 2003). Plaintiff, the "Insured," appealed a Middle District of Florida decision on summary judgment that the claim at issue was not covered by the insurance policy purchased from Defendant, the "Insurer." *Id.* at 1299. The Insured held consecutive "claims-made" insurance policies with the same Insurer: (1) for the period January 6, 1999 to January 6, 2000, at 12:01 am and (2) from January 6, 2000, at 12:01am, to January 6, 2001. *Id.* at 1300. The claim at issue accrued during the first policy period; however, it was not reported to the Insurer until January 6, 2000—mere hours after the first policy period had ended. *Id.* The policy language allowed for a 30 day automatic extension, "if the policy is cancelled or

7

not renewed;" the policy was silent with respect to any extension if the Insured should choose to renew the insurance. *Id.* at 1302. The Insured argued that this automatic extension should also apply in his case, where there was a renewal. *Id.* The Insurer argued that the policy's silence with respect to renewal means that there is no extension in the case of renewal. *Id.*

The Eleventh Circuit in *Cast Steel* analogized a Sixth District of Ohio case, *Helberg v. Nat'l Union Fire Ins. Co.*, 102 Ohio App.3d 6790, 657 N.E.2d 832, where the insured had purchased two consecutive, claims-made insurance policies. *See Cast Steel*, 348 F.3d at 1303. In *Helberg*, the policy provided for the option to purchase extended coverage where the policy either was not renewed, or the insured chose to switch insurance companies; there was no other provision for a grace period. *Id.* The *Helberg* court determined that because the language of the extension purchase option did not mention a situation where the insured renews, it must not be necessary to purchase extended coverage when the insured renews. *Id.* at 1303-04. Therefore, according to the *Helberg* court, the claim should be covered by the insurance, even though it was reported six weeks after the end of the first policy. *Id.*

The Eleventh Circuit in *Cast Steel* stated that it would be "both illogical and inequitable to deny coverage to the insured who chooses to renew its claims-made policy for successive years with the same insurer—particularly in the scenario" faced by the court—that the claim was made mere hours too late. *Id.* at 1304. The Eleventh Circuit noted that as in *Helberg*, "if choosing to cancel or non-renew provided the insured with an extended reporting period, electing to continue to do business with the same insurer by renewing the claims made policy certainly should not precipitate a trap wherein claims spanning the renewal are denied." *Id.* at 1304 (quoting *Helberg*, 657 N.E.2d at 834) (internal quotation marks omitted). The Eleventh Circuit reasoned that, consequently, it should interpret the extended reporting clause as applying to the

8

case where the insured has renewed. *Id.* The renewal extended the time period to report by 30 days per the automatic extension provision; therefore, the claim was timely made and reported, so is covered by the first policy period. *See id.*

Finally, in *Black*, a Middle District of Florida court interpreted the same, Continental-provided-insurance policy language as the present case. *Continental Casualty Company v. Black, Sims & Birch, LLP, et al.*, Case No. 6:10-cv-1290-Orl-35KRS (M.D. Fla Dec. 14 2011) (adopting R&R dated Nov. 8 2011). In that case, the magistrate judge issued a Report and Recommendation, which the district court judge adopted. *See id.* The Report and Recommendation resolved summary judgment motions similar to the case at hand. *See id.* In *Black*, the insured held two consecutive, relevant insurance policies from Continental: (1) from July 1, 2007 to July 1, 2008, and (2) from July 1, 2008 to July 1, 2009. *Id.* at 7-8. Both insurance policies were "claims-made-and-reported." *See id*. As in the present case, the policies provided for an automatic extended reporting period of 60 days where the Insured cancelled, or otherwise did not renew if the Insured obtained another insurance policy. *Id.* The policy did not specify if and how this provision would apply to renewal. *Id.*

The claim at issue in that case accrued during the first policy period, but was not reported until seven weeks after first policy period ended. *Id.* Therefore, if the 60 day extended reporting period applied to renewal, the claim would be covered, and if the 60 day extended reporting period was construed not to cover situations of renewal, it would not be covered. *See id.* at 15. The magistrate judge relied on *Cast Steel* in recommending that the 60 day extended reporting period should apply to situations where the insured renews, reasoning that the extended reporting provisions are ambiguous with respect to renewal, and should therefore be construed in favor of coverage. *Id.* The court noted that while the seven weeks at issue was significantly longer than

9

the brief period of hours in *Cast Steel*, the in that case the Eleventh Circuit relied on *Helberg*, where there was a six week period between the end of the first policy and the time that the Insured reported the claim. *Id.* at 12.

### B.     The Parties' Arguments

The thrust of Continental's position is that the Claim was made in a different policy period than it was reported, precluding coverage. This is true, Continental maintains, despite the fact that Hochfelsen renewed his Continental insurance for several consecutive years, because each policy period remains separate for reporting purposes. In other words, the successive policy periods do not merge into one long policy period in which a claim could be both made and reported. Continental argues that each of the policies' language clearly specifies that a claim must be made and reported within the same, individual policy period—in fact, the requirement is written into the policy itself five times.

The Underlying Claimants counter that the policy language is, in fact, ambiguous, and therefore the policy should be construed in favor of coverage. As evidence of the ambiguity, they first cite Hochfelsen's subjective belief that he had continuous coverage, and that such understanding was encouraged by the "Claims Made Protection" document that Gilsbar gave Hochfelsen and the use of the same policy number for each of the renewed policies. Second, the Underlying Claimants argue that, as in *Cast Steel*, the automatic extended reporting provision language is ambiguous. Each of these will be addressed in turn.

### 1.  The Gilsbar Materials

Continental contends that the "Gilsbar materials"—documents given to Hochfelsen by Gilsbar when he purchased the insurance, on which Hochfelsen based his belief that his Claim would be covered despite the reporting delay—are not relevant because they are extrinsic

evidence that should not be considered in construing the insurance contract. Further, Continental asserts that even if the materials were properly considered, they are not inconsistent with the language of the actual policies, which require that a claim be both made and reported during the same policy period.  While the Claims-Made Protection Document does not state specifically that the claim must be made and reported in the same policy period, Underlying Claimants have been unable to point out any language in the document that is inconsistent with the coverage granted to Hochfelsen. Moreover, while Hochfelsen was assigned the same policy number for each of his consecutive policies, this fact is not sufficient to make the essential made-and-reported policy terms ambiguous.

    2.  **The Automatic Extended Reporting Period**

Underlying Claimants contend that the automatic extended reporting period language included in the policies renders the policies ambiguous because it does not directly address what happens when the insured renews his policy. Therefore, they assert, the policy should be read so that each renewed policy merges into a single continuous policy period, in which Hochfelsen timely made and reported the Claim. In essence, they reason that because the automatic reporting extension provision is silent with respect to renewal, the silence should be taken to mean that an extended reporting period is unnecessary because seamless, continuous coverage exists, from the inception of Hochfelsen's first Continental-issued policy and continuing so long as Hochfelsen continues to renew his coverage. In support, Underlying Claimants cite to *Cast Steel* and *Black*, where, as in the present case, the extended reporting period language referred directly to cancellation and non-renewal, but was silent with respect to renewal. Underlying Claimants distinguish *Pantropic*, which they say dealt with a scenario that contemplated renewal—the policy stated that "in any event" (presumably including renewal), reporting must occur within 60

days of the end of the policy period. *Pantropic Power Prods., Inc. v. Fireman's Fund Insurance Co.*, 141 F.Supp.2d, 1366, 1368 (S.D. Fla. 2001).

Underlying Claimants' argument fails because in both *Cast Steel* and *Black*, the ambiguity that the courts found in the extended reporting provision was addressed by construing the extended reporting period to apply in the case of renewal. Whereas in *Cast Steel* the claim was reported mere hours after the termination of the policy period, and in *Black* seven weeks, in the present case over two years passed before Hochfelsen reported the Claim. Continental correctly asserts that in this case, even if *Cast Steel* is read to mandate extending the automatic 60 day reporting extension to Hochfelsen's policies upon renewal, the Underlying Claimants would still not prevail because far more than 60 days elapsed between the time when the claim was made and when Hochfelsen first reported the claim to Continental.

The applicable case is *Pantropic*, where even with the benefit of the extended reporting period, the *Pantropic* insured still did not report in a timely fashion. *Pantropic*, 141 F.Supp.2d at 1368-69. As in the present case, Continental argues, the *Pantropic* insured could have received coverage had he reported the claim during the first policy period plus 60 days and not delayed. *Id.* at1370. Extending coverage to Hochfelsen would provide "a benefit for which he has not given consideration." *Id* .at 1369; *see also Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512 (1983) (holding that "allow[ing] an extension of reporting time after the end of the policy period [would be] tantamount to an extension of coverage to the insured gratis, something for which the insurer has not bargained").

For the foregoing reasons, Hochfelsen failed to report the Claim in a timely manner, and therefore the Claim is not covered under any of Hochfelsen's Continental-provided insurance policies.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant/Counterclaim Plaintiff Continental Casualty Company's Motion for Summary Judgment [DE 27] is **GRANTED**;

2. Plaintiffs and Counterclaim Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law [DE 28] is **DENIED**; and

3. Pursuant to Federal Rules of Civil Procedure 58(a), the Court will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of September, 2014.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record